UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-23377

MICHAEL FRIEDMAN,

      Plaintiff,

v.

ROYAL CARIBBEAN GROUP,

      Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

      Plaintiff, MICHAEL FRIEDMAN (hereinafter "FRIEDMAN"), through undersigned counsel, sues Defendant, ROYAL CARIBBEAN GROUP, (hereinafter "ROYAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1.    FRIEDMAN seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by ROYAL.

5.    FRIEDMAN is *sui juris* and is a resident and citizen of the state of New Jersey.

6.    ROYAL is a citizen of the state of Florida and the nation of Liberia.

7.     ROYAL is a foreign corporation that is authorized to conduct and that does conduct business in the state of Florida, that at all times material hereto was and is doing business in Miami-Dade County, Florida, and that maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.     ROYAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

     a.     Operated, conducted, engaged in, or carried on a business venture; and/or

     b.     Had an office or agency; and/or

     c.     Engaged in substantial activity; and/or

     d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the surfaces that caused FRIEDMAN to slip, the water on the subject surfaces, the cart, the surrounding area, and all material and effects pertaining thereto, including any anti-slip/skid material that was applied or that should have been applied, and/or other parts thereof, drains that were or should have been in the area to reduce the amount of liquid in the area, any sources of liquid in the subject area and/or the sources of the liquid involved in FRIEDMAN's incident, the area and surfaces' design and/or visual condition, and/or any other applied, adhesive, and/or other material.

11.     At all times material hereto, ROYAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Oasis of the Seas*.

12.    At all times material hereto, ROYAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in FRIEDMAN'S incident.

13.    FRIEDMAN'S incident occurred on or about August 20, 2022, while he was a fare paying passenger on ROYAL'S vessel, the *Oasis of the Seas*.



14.    On or about August 20, 2022, between approximately 11:00 a.m. and 3:00 p.m., FRIEDMAN was walking on the pool deck (deck 15) on the teak/brown colored walking path near the rock formation shown in the exemplar photograph above. A male crewmember was pushing a cart next to FRIEDMAN as he was walking. Suddenly and unexpectedly, this crewmember turned the cart into FRIEDMAN, causing him to lose stable footing and to step from the walking path onto the grated surface next to the rock formation and then onto the light-colored surface in the photograph above. Both the grated surface and the light-colored surface (collectively "subject surfaces") were wet and unreasonably slippery. Furthermore, the grated surface unreasonably declined towards the light-colored surface, which made the grated surface an even greater slipping

hazard. When FRIEDMAN's foot made contact with the grated surface, his footing became even more unstable, causing him to step onto the light-colored surface with severely diminished balance, and to slip, roll his ankle, and fall.

15.    As a result, he sustained severe injuries that include, but are not limited to, ankle fractures, ruptured tendons, and other serious injuries which require surger(ies).

16.    Approximately fifteen (15) minutes after his incident, FRIEDMAN went to guest services to repot his incident. The line was very long, and a female crewmember came up to him while he was in line to see if she could resolve his issues. FRIEDMAN reported his incident to her. However, this female crewmember did not direct him to the ship's medical center. Had this female crewmember directed FRIEDMAN to the ship's medical center, he would have gone there to treat his injuries.

17.    At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

   a.    The crewmember who unreasonably pushed the subject cart into FRIEDMAN.

   b.    The water on the subject surfaces, which caused the subject surfaces to become unreasonably slippery, and which caused FRIEDMAN to slip and fall.

   c.    The unreasonable slipperiness of the subject surfaces, which also lacked adequate slip resistant materials, both when wet and when not wet.

   d.    The unreasonable decline of the subject grated surface.

   e.    The unreasonable lack of space in the section with the teak/brown surface, for reasons that including, but not limited to, the unreasonably protruding lounge chairs in this area, which did not provide sufficient space for carts such as the subject cart to safely navigate through.

    f.   There were no reasonable safety measures such as reasonable places FRIEDMAN could grab in the subject area during his fall.

    g.   There was either non-existent drainage for the subject surfaces or any such drainage was not reasonably draining liquid from the subject area at the time of FRIEDMAN's incident.

    h.   Other dangerous conditions that will be revealed through discovery.

18.   Each of these dangerous conditions alone was sufficient to cause FRIEDMAN'S incident and injuries, and FRIEDMAN is alleging that ROYAL was negligent as to each of these conditions in the alternative.

19.   ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

    a.   The ROYAL crewmember pushing the subject cart in the subject area at the time of the incident was in the immediate vicinity such that this crewmember was or should have been aware of the dangerous and/or risk-creating conditions in the area and warned of and/or removed these conditions. Instead, this crewmember pushed the subject cart into FRIEDMAN, thereby causing his incident.

    b.   ROYAL participated in the installation and/or design of the subject area, or alternatively, ROYAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject surface, such that ROYAL should have known of the design defects of the subject surface and area before providing them for public use. These design defects include, but are not limited to, the dangers outlined in paragraph 17 of this complaint.

    c.   There are relevant safety standards/recommendations/other guidelines regarding the

safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 17 of this Complaint, and ROYAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for ROYAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

d.  ROYAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in FRIEDMAN'S incident, and if it did not know of these dangerous conditions, this was because ROYAL failed to adequately inspect the subject area prior to FRIEDMAN'S incident.

e.  Previous passengers in prior cases suffered prior slip and fall incidents involving similar surfaces on the same ship and other ships in ROYAL'S fleet (including Royal Caribbean International, Celebrity Cruises, and Silversea Cruises), including, but not limited to *Schleife v. Royal Caribbean Cruises, Ltd*., No. 19-22776, 2021 WL 1723673, at *2 (S.D. Fla. Apr. 30, 2021) ("On September 30, 2018, around 3pm, Plaintiff was walking to his cabin when he slipped and fell on the pool deck. The deck surface was wet, and unreasonably slippery."), and Prokopenko v. Royal Caribbean Cruises Ltd., No. 10-20068-CIV, 2010 WL 1524546, at *1 (S.D. Fla. Apr. 15, 2010) ("The principle factual allegation in the complaint is that the plaintiff '"was caused to fall on water on the deck of the ship at or near the swimming pool, causing her serious injury.'").

f.   Moreover, ROYAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

20.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

21.   The subject area and the vicinity lacked adequate safety features to prevent or minimize FRIEDMAN'S incident and/or injuries.

22.   These hazardous conditions were known, or should have been known, to ROYAL in the exercise of reasonable care.

23.   These hazardous conditions existed for a period of time before the incident.

24.   These conditions were neither open nor obvious to FRIEDMAN.

25.   At all times relevant, ROYAL failed to adequately inspect the subject area and the vicinity for dangers, and ROYAL failed to adequately warn FRIEDMAN of the dangers.

26.   At all times relevant, ROYAL had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

27.   At all times relevant, ROYAL failed to maintain the subject area and the vicinity in a reasonably safe condition.

28.   At all times relevant, ROYAL participated in the design and/or approved the design of the subject area and the vicinity involved in FRIEDMAN'S incident.

29.   At all times relevant, ROYAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in FRIEDMAN'S incident.

30.   The crewmembers of the *Oasis of the Seas* were in regular full-time employment of ROYAL and/or the ship, as salaried crewmembers.

31.   ROYAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and ROYAL had the right to hire and fire its crewmembers, employees, and/or agents.

32.   ROYAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

33.   The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of ROYAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

34.   The crewmembers were represented to FRIEDMAN and the ship's passengers as employees of ROYAL through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by ROYAL. ROYAL knew that the crewmembers represented themselves to be employees of ROYAL and allowed them to represent themselves as such. FRIEDMAN detrimentally relied on these representations as FRIEDMAN would not have proceeded on the subject cruise had he believed the crewmembers were not employees of ROYAL.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

35.   FRIEDMAN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

36.   ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

37.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

38.   At all times material, ROYAL, through its vessel, crew, agents, employees, staff

and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL breached the duty of reasonable care owed to FRIEDMAN and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 17 of the instant Complaint were present at the time of FRIEDMAN'S incident.

39.   ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the Complaint.

40.   These risk-creating and/or dangerous conditions were caused by ROYAL'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

41.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

42.   ROYAL'S negligence proximately caused FRIEDMAN great bodily harm in that, but for ROYAL'S negligence, FRIEDMAN'S injuries would not have occurred.

43.   As a result of ROYAL'S negligence, FRIEDMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of FRIEDMAN'S vacation, cruise, and transportation costs.

44.    The losses are permanent and/or continuing in nature.

45.    FRIEDMAN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL FRIEDMAN, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that FRIEDMAN will suffer and incur in the future, as a result of FRIEDMAN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT II**
**<u>NEGLIGENT FAILURE TO MAINTAIN</u>**

46.    FRIEDMAN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

47.    ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

48.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

49.    At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL, breached the duty of reasonable care owed to FRIEDMAN and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 17 of the instant Complaint were present

at the time of FRIEDMAN'S incident.

50.    ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant complaint.

51.    Moreover, these risk-creating and/or dangerous conditions were caused by ROYAL'S failure to adequately maintain the subject area and the vicinity.

52.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

53.    ROYAL'S negligence proximately caused FRIEDMAN great bodily harm in that, but for ROYAL'S negligence, FRIEDMAN'S injuries would not have occurred.

54.    As a result of ROYAL'S negligence, FRIEDMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of FRIEDMAN'S vacation, cruise, and transportation costs.

55.    The losses are permanent and/or continuing in nature.

56.    FRIEDMAN has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MICHAEL FRIEDMAN, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that FRIEDMAN will suffer and incur in the future, as a result of

FRIEDMAN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## NEGLIGENT FAILURE TO REMEDY

57.    FRIEDMAN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

58.    ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

59.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

60.    At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL, breached the duty of reasonable care owed to FRIEDMAN and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 17 of the instant Complaint were present at the time of FRIEDMAN'S incident.

61.    ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

62.    Moreover, these risk-creating and/or dangerous conditions were caused ROYAL'S failure to adequately remedy the subject area.

63.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

64.     ROYAL'S negligence proximately caused FRIEDMAN great bodily harm in that, but for ROYAL'S negligence, FRIEDMAN'S injuries would not have occurred.

65.     As a result of ROYAL'S negligence, FRIEDMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of FRIEDMAN'S vacation, cruise, and transportation costs.

66.     The losses are permanent and/or continuing in nature.

67.     FRIEDMAN has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MICHAEL FRIEDMAN, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that FRIEDMAN will suffer and incur in the future, as a result of FRIEDMAN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION**

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 13 of 21**

68.   FRIEDMAN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

69.   At all times relevant, ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including FRIEDMAN.

70.   Such duty includes, but is not limited to, the duty that ROYAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to FRIEDMAN.

71.   Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

72.   At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL, breached the duty of reasonable care owed to FRIEDMAN and was negligent by failing to warn FRIEDMAN of the dangerous conditions discussed in paragraph 17 of the instant Complaint.

73.   Furthermore, ROYAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

74.   These dangerous conditions were also created by ROYAL.

75.   ROYAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or ROYAL failed to warn FRIEDMAN despite knowing of the dangers.

76.   These dangerous conditions existed for a period of time before the incident.

77.   These conditions were neither open nor obvious to FRIEDMAN.

78.   ROYAL'S breach was the cause in-fact of FRIEDMAN'S great bodily harm in that,

but for ROYAL'S breach FRIEDMAN'S injuries would not have occurred.

79.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

80.   ROYAL'S breach proximately caused FRIEDMAN great bodily harm in that the incident that occurred was a foreseeable result of ROYAL'S breach.

81.   As a result of ROYAL'S negligence, FRIEDMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of FRIEDMAN'S vacation, cruise, and transportation costs.

82.   The losses are permanent and/or continuing in nature.

83.   FRIEDMAN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL FRIEDMAN, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that FRIEDMAN will suffer and incur in the future, as a result of FRIEDMAN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**

## NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY

84.    FRIEDMAN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

85.    At all times material hereto, ROYAL owed a duty to its passengers, and in particular a duty to FRIEDMAN, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 17 in the instant Complaint, as well as to design and install reasonable safeguards.

86.    At all times material hereto, ROYAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which FRIEDMAN was injured into the channels of trade, and/or ROYAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

87.    At all times material hereto, ROYAL manufactured, designed, installed, and/or approved of the *Oasis of the Seas*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to FRIEDMAN, to design, install and/or approve of the subject area and the vicinity without any defects.

88.    At all times material hereto, ROYAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with ROYAL, designed, installed, and/or approved of the subject area and the vicinity involved in FRIEDMAN'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

89.    ROYAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

90.     ROYAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Oasis of the Seas*, during the new build process.

91.     ROYAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

92.     ROYAL has the right to inspect and reject design elements before taking possession of the ship.

93.     However, ROYAL permitted the dangerous conditions discussed in paragraph 17 of the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

94.     Furthermore, ROYAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

95.     The design flaws that made the subject area and the vicinity involved in FRIEDMAN'S incident unreasonably dangerous were the direct and proximate cause of FRIEDMAN'S injuries.

96.     ROYAL is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in FRIEDMAN'S incident, which it knew or should have known of.

97.     ROYAL failed to correct and/or remedy the defective conditions, despite the fact that ROYAL knew or should have known of the danger(s).

98.     ROYAL'S breach was the cause in-fact of FRIEDMAN'S great bodily harm in that, but for ROYAL'S breach FRIEDMAN'S injuries would not have occurred.

99.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water

subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

100. ROYAL'S breach proximately caused FRIEDMAN great bodily harm in that the incident that occurred was a foreseeable result of ROYAL'S breach.

101. As a result of ROYAL'S negligence, FRIEDMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of FRIEDMAN'S vacation, cruise, and transportation costs.

102. The losses are permanent and/or continuing in nature.

103. FRIEDMAN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL FRIEDMAN, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that FRIEDMAN will suffer and incur in the future, as a result of FRIEDMAN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE FOR THE ACTS OF ROYAL'S CREW, STAFF, EMPLOYEES,**
**AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

104.  FRIEDMAN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

105.  ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

106.  The crewmembers who were working in and/or who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or securing the subject area, including specifically the crewmember who pushed the subject cart into FRIEDMAN, were agents of ROYAL for the following reasons:

a.      They were the staff and/or employees of ROYAL, or were ROYAL'S agents, apparent agents, and/or servants; and/or

b.      These staff, employees, and/or agents were subject to the right of control by ROYAL; and/or

c.      These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.      ROYAL acknowledged that these staff, employees, and/or agents would act on ROYAL'S behalf, and they accepted the undertaking.

107.  ROYAL is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in paragraph 17 of the instant complaint.

108.  ROYAL'S breach was the cause in-fact of FRIEDMAN'S great bodily harm in that, but for ROYAL'S breach FRIEDMAN'S injuries would not have occurred.

109.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to

maritime travel, and as such were "clearly linked to nautical adventure."

110. This negligence proximately caused FRIEDMAN great bodily harm in that, but for this negligence, FRIEDMAN'S injuries would not have occurred.

111. As a result of ROYAL'S negligence, FRIEDMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of FRIEDMAN'S vacation, cruise, and transportation costs.

112. The losses are permanent and/or continuing in nature.

113. FRIEDMAN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL FRIEDMAN, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that FRIEDMAN will suffer and incur in the future, as a result of FRIEDMAN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, MICHAEL FRIEDMAN, demands trial by jury on all issues so triable.

**Dated:** October 17, 2022.

Respectfully submitted,

**ARONFELD TRIAL LAWYERS**
Aronfeld.com
**Page 20 of 21**

*/s/ Matthias M. Hayashi*

**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:        (305) 441.0440
F:        (305) 441.0198
***Attorneys for FRIEDMAN***